Mr. Chief Justice Shahkey
delivered the opinion of the court.
The plaintiff in error was sued as a common-carrier, to re *576 cover the value of fifty-nine bales of cotton, shipped on board of a fiat boat, of which he was the owner. The plaintiff below introduced the bill of lading, and also witnesses, who proved the receipt of the cotton by the plaintiff, and the value of cotton in market. The defendant’s counsel proposed to prove, by cross-examining the first witness introduced by the plaintiff, that the boat “ was lost by inevitable accident, and without the negligence or misconduct of the defendant, as master of said boat; to the introduction of which testimony, the plaintiff by hi? counsel, objected, and the said objection was sustained by the court, and the said defendant was by the court precluded from giving evidence as to the loss of said boat by inevitable accident, or any evidence except what went to show the delivery of the cotton, to which opinion the defendant excepted.”
This extract from the bill of exceptions, shows the principal point in the cause. The court seems to have acted under the impression that nothing will excuse a common-carrier for the loss of goods received by him for transportation. This is, at least, the necessary effect of the broad and unqualified declaration that no evidence could be received, except evidence of the delivery of the article. This proposition is entirely too broad. It is true that a common-carrier is held to the strictest accountability, the common law being the law by which contracts of bailment are governed. But strict as this law undoubtedly is, it is not so rigid as to cut off all defence. There are two grounds on which a common-carrier may rest his defence, either that the loss occurred by the act of God, or by the public enemies of the country. Story on Bailments, 320. In questions, says the commentator, as to the liability of a carrier, the point ordinarily is not so much, whether he has been guilty of negligence or not,/ as whether the loss comes within either of the excepted cases.1 What are properly denominated losses by the act of God, may happen in various ways, any of which will be an excuse to the carrier. The phrase used in the bill of exceptions, is equally as comprehensive. Indeed, “ inevitable accident ” is now used as a phrase synonymous with “ the act of God.” Judge Story says, by the act of God. is meant inevitable accident, or cas *577 ualty. Story ou Bailments, 318. See also Carman v. Gilmore, in MS. “ Inevitable accident,” is now a technical expression, and being a good defence to a common-carrier, we must suppose that as the defendant offered evidence of loss by inevitable accident, in his defence, the technical meaning was intended to be employed in the offer to introduce evidence. In that sense only was such evidence admissible, and when technical terms are used, in connection with an apparent intention to employ the technical sense, we are not at liberty to say that they were only intended to be used according to their common acceptation. > Ah' expression of the judge, who delivered the opinion in the case of McArthur v. Sears, 21 Wendell, 190, is relied on as showing that accidents, arising from human agency, are sometimes inevitable. To a certain extent this may be true. At the particular time, and under the particular circumstances that an accident occurs, it may be inevitable; that is, under the existing state of preparation for the protection of the article, it may be impossible for the carrier to prevent the accident, but could it not have been guarded against by human foresight and sagacity? that is the question. Story on Bailments, 330. And if the accident could have been guarded against, even by an extraordinary degree of skill and care, then in the strict sense of the term, it can scarcely be said to have been inevitable., But suppose it be true that “ accidents arising from human force or fraud, are sometimes inevitable,” still it would not follow that the evidence of inevitable accident was properly excluded in this case. As a general rule, s.hch accidents arise from natural causes; the exceptions, if theife be any, are very few, and the court should not have excluded the evidence on the presumption that it might show an acciáent falling within an exception to the general rule. If then we /are right in the position that, by inevitable accident, is meant a c/asualty arising from natural causes, and is the same in meaning; with an accident by the act of God, then the defence attlempted was a good one, and the court erred in rejecting it. Wihether the accident by which the boat was lost, was inevitable in/ the legal signification of the word, is another question; and it/ is one about which we cannot determine, because we are not *578 informed by what particular accident the loss occurred. The defence was placed on the ground of loss by inevitable accident; this, we say, is a good defence for a common-carrier, but whether the proof would have brought the defendant within the law, is a question which of course would depend on the proof, which the court would not hear. This was in effect to deny the defendant the right to make any such defence. The defendant, although he relied on this defence, might nevertheless have failed in making it good. It might have turned out that the boat was lost by accident, and not from the negligence of the defendant, but still the accident may not have been inevitable.
It is however insisted that nothing will excuse the defendant, because by his contract he took all risks, even those which might arise from inevitable accident. This position is assumed on the ground that the bill of lading does not contain a clause excepting the dangers of the river, and the absence of such exception is construed into an undertaking to deliver at all events. It is usual for carriers by water, to except in express terms, the dangers of the river or of the seas. This has the effect to exempt them from losses arising, not only from natural causes, but from accidents which are usually considered as peculiar to the river, or the sea. The phrase, “ perils of the seas,” in its more enlarged sense, signifies something more than accidents arising from natural causes. Hence the propriety and use of such an exception in a bill of lading. But it is said, if this phrase is to be used only in its limited sense, as denoting only accidents from natural causes, peculiar to that element, then there is no use for the exception in the bill of lading, as common-carriers are excused by law from losses by such accidents. Story on Bailments, 330, 331. If then the bill of lading had contained the usual exceptions, it would seem that it would have been useless, when exemption from loss is claimed on the ground of inevitable accident. This is necessarily the rule. The law of the contract is part of the contract, and in the ¡absence of express stipulations, the law governs. It is not to\ be presumed that the party undertook beyond the terms of his contract. His silence is not to be construed into an engagement to *579 do more than the terms of his contract and the law required. The law engrafts on the contract a condition that the carrier shall not be responsible for inevitable accidents, and nothing but an express undertaking will dispense with this condition. The contract is not to be expoundéd-unfavorably to the bailee, beyond the obvious scope of its terms. Story, on Bailments, 22. We regard the absence of the usual exception as leaving the parties to their legal rights and responsibilities. They stood just as they would, if they had acted on an implied contract. So that if the court acted on the supposition that the bill of lading was such an undertaking as to exclude a defence arising from inevitable accident, it was a mistaken notion of the law.
It is also insisted that, even if it was error to disallow the proof of the loss by inevitable accident, still it cannot now be corrected, because it does not appear by the bill of exceptions, how or by what accident the loss occurred, and that the court will not reverse, for an improper rejection of evidence, unless the evidence be set out.
As a general rule, it is no doubt proper that the rejected evidence should be brought to the notice of the court, so that it may judge of its materiality. This was held to be the rule'in the case of Smith v. The Natchez Steamboat Company, 1 How. 479. This rule does not fully meet the question. Here the party was deprived of any and all evidence which went to establish a certain fact, which fact was a legal defence. The rule was applied in the case referred to, on the ruling out of a deposition, which deposition was not set out in the record, and it could not be known therefore what fact it conduced to prove. Here we know what feet wás intended to be proved. When'" the question is whether, the evidence is material to prove the issue, then it should be set out, but when the question is whether any evidence can be introduced to prove the issue, or a material fact, then it cannot be important, that it should be set out, because the court is then called on to sáy whether it is competent to prove such fact. In the first case, the court is only to determine whether the evidence tended to prove a given fact. Here it seems the defendant offered to introduce evidence to prove *580 that the boat was lost by inevitable accident; the court held that any proof of that fact was inadmissible, thus virtually deciding that it constituted no defence, even if proved. Now, although we do not know what proof the defendant intended to introduce, yet we do know what fact he intended to prove. This fact constituted a good defence, and was properly in issue under the pleadings; but the court said you shall not introduce any evidence of this fact; there is but one point to which you can be permitted to give any evidence, and that is as to the delivery of the cotton. In this, the court erred; and the judgment must be- reversed, and the cause remanded for a new trial.